UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **Michele Guidry**<br><br>*Plaintiff*<br><br>**VERSUS**<br><br>**Jami Guidry; Amanda Guidry; Dr. William "Beau" Clark, East Baton Rouge Parish Coroner, in his Individual and Official Capacities; Unknown East Baton Rouge Parish Sheriff's Office Deputies #1, #2, and #3, in their individual capacities; and Sheriff Sid Gautreaux in his official capacity as the Sheriff of East Baton Rouge Parish**<br><br>*Defendants* | **CIVIL ACTION** _____<br><br><br>**NO** _____ |

## COMPLAINT

MICHELE GUIDRY is a person of the full age of majority who resides in East Baton Rouge Parish, who represents the following:

## INTRODUCTION

1. This action concerns a conspiracy by two Louisiana citizens to illegally deprive the Plaintiff of her liberty by maliciously abusing the court system and other legal processes. Their actions set in motion a series of events which ultimately resulted in the deprivation of Plaintiff's constitutional rights under color of state law through the combined actions of

1

the Coroner and the Sheriff of East Baton Rouge Parish in recklessly responding to the false information provided by the two conspirators, as more fully explained hereinafter.

## PARTIES

Made defendants herein are:

1. JAMI GUIDRY, who is a resident of the full age of majority of the Parish of Terrebonne, State of Louisiana (hereinafter "Jami").

2. AMANDA GUIDRY, who is a resident of the full age of majority of the Parish of Terrebonne, State of Louisiana (hereinafter "Amanda").

3. UNKNOWN EBRSO DEPUTIES #1, #2, and #3, in their individual capacities, who at all times relevant hereto were employees of the East Baton Rouge Parish Sheriff's Office and who at all times pertinent hereto were acting under color of state law (hereinafter "Deputies").

4. SID GAUTREAUX, in his official capacity, as the Sheriff of East Baton Rouge Parish, State of Louisiana, who at all times pertinent hereto was acting under color of state law (hereinafter "Sheriff").

5. DR. WILLIAM "BEAU" CLARK, individually and in his official capacity as the Coroner for East Baton Rouge Parish, State of Louisiana, who at all times pertinent hereto was acting under color of state law (hereinafter "Coroner").

## JURISDICTION AND VENUE

6. Plaintiff brings this action under 42 U.S.C. § 1983 to vindicate her rights guaranteed by the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution. Plaintiffs

2

also bring supplemental state-law claims. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

7. This case seeks remedies under 28 U.S.C. §§ 1983 and 1988, as well as state law.

8. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to Plaintiffs' claims arose in the Middle District of Louisiana.

## BACKGROUND

9. Plaintiff, Michele Guidry, and defendant, Amanda Guidry, were related by the fifth marriage of Michele's father to Amanda. Amanda, who was only five years older than Michele, had been married to Michele's father for less than two years when Michele's father died from cancer on August 23, 2021.

10. Michele and Amanda never had a good relationship, as Michele believed that Amanda had married her father for financial gain and that she was taking advantage of him.

11. Jami Guidry is Amanda Guidry's daughter and, as such, was Michele Guidry's step-sister during the marriage between Amanda and Michele's father. Michele and Jami did not have much to do with one another during Amanda's marriage to Michele's father and to the extent that they did, they did not get along. Michele observed behaviors in Jami that led her to believe that Jami was an opportunist and "gold-digger" like her mother. Michele had made it known that she was disgusted that Jami, at 22 years old, was dating an elderly wheelchair bound relative of Michele's. Jami had also tried to get Michele's father to spend money on her during his short marriage to Jami's mother.

12. At times, during the marriage between Amanda and Michele's father, Michele expressed her disdain for Amanda and Jami, which did not sit well with Amanda and Jami. Michele was very outspoken about the way that she felt about them and even filed a complaint against Amanda with Elderly Protective Services due to her concerns about Amanda's behavior as it related to her father's finances. As a licensed clinical social worker, Michele was a mandatory reporter of elder abuse, pursuant to the provisions of La. R.S. La. R.S. 15:1504, in addition to being a concerned daughter.

13. Although Craig Guidry died on August 23, 2021, he was not able to be buried until September 21, 2021, due to delays caused by Hurricane Ida (which made landfall in Louisiana on August 29, 2021).

14. From the date that Michele's father died until the date that he was buried, Michele was tolerant of Amanda and Jami, as she was grieving and was determined to keep the peace for her father's sake.

## COUNT I

**(Action against Jami and Amanda Guidry)**

15. On September 22, 2021, the day after Michele's father was buried, Amanda and Jami contacted the Terrebonne Parish Sheriff's Office (where Amanda's sister was employed as a deputy) relative to filing a criminal complaint against Michele for alleged harassment. An arrest warrant was issued for "improper telephone communications", in violation of La. R.S. 14:285, as a result of these actions by Amanda and Jami. Michele traveled to Terrebonne Parish to accept a summons in lieu of being arrested. On September 15, 2022, Michele was acquitted of these charges.

16. On September 22, 2021, after contacting the Terrebonne Parish Sheriff's Office, Amanda and Jami went to the Terrebonne Parish Coroner's Office to seek an Order of Protective Custody to have Michele picked up and held for a mental health evaluation. However, this mission was unsuccessful, as they were informed that Terrebonne Parish did not have jurisdiction over Michele and that they would have to go to Baton Rouge to get this done. Since Amanda had to go to work the following day, it was decided by Amanda and Jami that Jami would travel to Baton Rouge on her own to have this done the following day.

17. On September 23, 2021, Jami traveled from Terrebonne Parish to East Baton Rouge Parish where she filed an affidavit with the East Baton Rouge Parish Coroner's Office to seek an order to have Michele taken into protective custody pursuant to the provisions of La. R.S. 28:53.2.

18. La. R.S. 28:53.2 allows for a person to be taken into custody for an involuntary mental health evaluation if "the person has a mental illness or is suffering from a substance-related or addictive disorder **and** is in need of immediate treatment to protect the person or others from physical harm". [Emphasis added].

19. On September 27, 2021, Amanda Guidry filed a "Petition for Protection from Abuse" against Michele pursuant to the provisions of La. R.S. 46:2131, et seq. or La. R.S. 46:2151 in Terrebonne Parish. A hearing was held in this matter in Terrebonne Parish on October 29, 2021. At the conclusion of the hearing, the Petition was **dismissed** due to Amanda's failure to prove the allegations by the appropriate standard and due to the insufficiency of the evidence presented.

20. Within a week of Michele's father being buried, and while she was suffering tremendous grief, her stepmother and step-sister unleashed a trifecta of malicious actions against her – criminal complaint (9/22/2021); affidavit filed with the Coroner (9/23/2021); and *Petition for Protection from Abuse* (9/27/2021) – acting in concert in furtherance of their conspiracy of retaliation against Michele for being the sole beneficiary on her father's life insurance policy.

21. Jami Guidry and Amanda Guidry are liable individually, jointly and in solido for the intentional infliction of emotional distress upon Michele, by conspiring to have Michele "committed" by the Coroner. It is believed that Jami and Amanda were angry that Michele had been named as the sole beneficiary on her father's life insurance policy and that this was an act of retaliation on their part.

22. In furtherance of the conspiracy to have Michele "committed", Jami Guidry signed an affidavit which declared that Michele had been "encouraged to seek treatment on a voluntary basis and is unwilling to be evaluated on a voluntary basis" and that Jami had attempted to contact a specific treatment facility or physician in order to obtain an examination" of Michele, both statements of which were false. The affidavit further asserted that Michele was in need of "immediate hospitalization" to protect Michele or others from **physical harm**. In support of her claim that Michele needed immediate hospitalization to protect Michele others from **physical harm**, Jami attested that Michele had been diagnosed with *binge eating disorder* and *depression*, and that she was *delusional;* that she made fake accounts and phone numbers to harass family, sabotages relationship of step-mother and father, and that she abuses alcohol.

23. La. R.S. 28:53.2(F) provides that:

    "Any person who is found guilty of executing a statement that another person has a mental illness or is suffering from a substance-related or addictive disorder and is in need of immediate treatment to protect the person or others that the affiant knows or should know is false may be imprisoned, with or without hard labor, for not more than one year, or fined not more than one thousand dollars where such affidavit was made with known falsity."

24. Jami had no factual basis to assert that Michele "abuses alcohol". Michele had only known Jami for approximately twenty months, during which time Michele was completely sober. Although Michele is a recovering alcoholic (of which Jami had been informed), Michele has been sober since 2009, with regular attendance at AA meetings. Jami had never witnessed Michele using alcohol whatsoever. This was absolutely false and malicious to indicate otherwise and demonstrates the intention to retaliate against Michele for her father's allocation of his life insurance to her.

25. Jami's assertion that Michele "sabotages the relationship between her step mother and father" could not logically provide a factual basis for asserting that the order for protective custody was needed. First, is does not support an indication of danger. Second, Jami failed to indicate that Michele's father had been deceased for a month, making any past interference by Michele in a relationship with a deceased party irrelevant to an urgent need for immediate hospitalization. Jami's failure to fully disclose this information was deceptive and misleading and a blatant attempt to manipulate the system to retaliate against Michele.

7

## COUNT II

### (Action against the Coroner)

26. In addition to being riddled with falsehoods, none of the foregoing established a factual basis to show that Michele was a danger to herself or others, in order to provide a statutory basis for the Coroner to sign off on an order for protective custody pursuant to the provisions of La. R.S. 28:53.2. None of the "facts" alleged by Jami pointed to Michele being a danger to herself or others such that she needed to be immediately taken into custody to protect herself or others against physical harm.

27. La. R.S. 28:53.2 requires that a threshold be met before a person is deprived of their liberty. The onus is on the Coroner to review the information provided to determine whether this threshold has been met before ordering a person to be taken into protective custody.

28. La. R.S. 28:53.2(A) provides that:

    Any parish coroner or judge of a court of competent jurisdiction may order a person to be taken into protective custody and transported to a treatment facility or the office of the coroner for immediate examination when a peace officer or other credible person executes a statement under private signature specifying that, to the best of his knowledge and belief, the person has a mental illness or is suffering from a substance-related or addictive disorder **and is in need of immediate treatment to protect the person or others from physical harm**. [Emphasis added].

29. In accordance with the provisions of La. R.S. 28:53.2, the Coroner only has the authority to order that a person be taken into custody when either a peace officer or other credible person executes a statement specifying certain required things. Of importance is that the statement must demonstrate a need to protect the person or others from **physical harm**. It cannot be exercised to simply protect others from annoyance or perceived harassment.

30. The statement provided by Jami, was legally deficient by failing to show that the order was necessary to prevent physical harm. The allegations did not support this mandatory element of the statute. Nothing within Jami's affidavit alluded to Michele making threats of physical harm or of committing any acts of physical harm in the past. Jami even indicated that Michele was not dangerous. Having binge eating disorder, depression, or delusions does not support the conclusion that the person poses a threat of physical harm, nor does the alleged behavior of creating fake accounts and phone numbers to harass family members or interfering with the relationship between her step-mother and her father. None of this meets the statutory requirements.

31. Based solely upon the assertions contained within the affidavit of Jami Guidry, the order to have Michele taken into protective custody was signed by Dr. William "Beau" Clark, Coroner for East Baton Rouge Parish on September 23, 2021, who at all times pertinent hereto was acting under color of state law.

32. La. R.S. 28:53.2 requires the Coroner to provide "[a] description of the acts or threats which have led to the belief that the person has a mental illness or is suffering from a substance-related or addictive disorder and is in need of immediate hospitalization to protect the person or others from physical harm."

33. The order signed by the Coroner indicated the following in support of the foregoing requirement: that is was ordered "in accordance with the attached verification and information provided therein".

34. By simply "rubber stamping" the statements made by Jami Guidry, the Coroner recklessly failed to fulfill his duties under the statute. The authority to take another person into

custody against their will must be exercised with extreme caution and with full regard for the individual liberties and rights provided to individuals by the U.S. Constitution.

35. Although the Coroner is entitled to qualified "good faith" immunity pursuant to La. R.S. 28:53.2(E), it was clearly established at the time that the Coroner signed the order for protective custody that it was illegal to deprive a person of their liberty for an involuntary mental health evaluation unless the person is a danger to himself or others, or is gravely disabled. *O'Connor v. Donaldson*, 422 U.S. 563, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975). Since this law was clearly established at the time of the issuance of the order, and the actions of the Coroner were objectively unreasonable, the Coroner is not entitled to qualified immunity.

36. The allegations within Jami's affidavit did not support a conclusion by the Coroner that Michele was a danger to herself or others, as required by La. R.S. 28:53.2 and should not have been "rubber stamped" as providing sufficient support for the issuance of an order for protective custody.

37. This order was provided by the Coroner's Office to the East Baton Rouge Parish Sheriff's Office for execution.

## COUNT III

### (Action against Unknown Deputies #1, #2, and #3)

38. Three unknown East Baton Rouge Parish Sheriff's deputies first went to Michele's place of employment, alerting her employer to their need to talk to her. Once Michele learned that this had occurred, it caused her extreme anxiety and embarrassment, as she was

employed as an LCSW at Ochsner Hospital, making this inquiry inherently problematic for her line of work.

39. Since Michele was in client meetings when they arrived, the deputies were not allowed to speak to her at that time. At approximately 6:30 p.m. that evening, the three unknown deputies appeared at Michele's home, knocking on her door. As a single woman living alone, Michele was alarmed by this show of force. When she asked why they were there, they told her it was an order for protective custody filed by Jami. In shock and disbelief that this was happening, Michele asked to contact an attorney. This request was denied. As a part of their seizure of Michele, the deputies performed a search of her purse.

40. As a licensed social worker, Michele was aware that she would be brought to a facility for evaluation in front of her colleagues, causing her much embarrassment and humiliation. The deputies were aware of this issue as well, as one of them commented that as a social worker that she should be aware of what was about to happen. She asked to speak to an attorney in an effort to rectify the situation before it was taken too far. An attorney would have been able to review the allegations set forth in the application to determine their legal sufficiency and discuss the situation with the Coroner.

41. At all relevant times during the course of Michele's arrest, Unknown Deputies #1, #2, and #3 were acting in the course and scope of their employment with the East Baton Rouge Parish Sheriff's Office, and as a result, defendant, the East Baton Rouge Parish Sheriff's Office is legally liable for the Unknown Deputies' actions to the extent that their actions were made pursuant to an official policy or unofficial custom of the East Baton Rouge Parish Sheriff's Office.

42. A brief review of the face of the affidavit shows that the allegations were clearly insufficient and failed to provide probable cause to support an order for protective custody.

43. The deputies had an obligation to intervene since any reasonable officer would have been aware that the affidavit failed to provide probable cause for the issuance of the order by the Coroner.  By failing to intervene and refusing to allow Michele to contact an attorney, the deputies exhibited a reckless disregard for Michele's constitutional rights.  In accordance with *Whitley v. Hanna,* 726 F.3d 631, 646 (5th Cir. 2013) an officer can be held liable for failing to intervene where he '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'.

44. Taking Michele into protective custody and searching her purse was unreasonable under the circumstances, an invasion of her privacy and violative of Fourth Amendment guarantees against unreasonable search and seizure under the U.S. Constitution.

45. The actions of the unknown deputies #1, #2, and #3 were in violation of the Fourth Amendment to the U.S. Constitution by depriving her of her liberty with knowledge or reckless indifference to the defects of the warrant and the unjustifiable search of her purse, making the defendants liable under 42 U.S.C. Sec. 1983.

46. Taking a person into custody pursuant to an order for protective custody is an arrest, which entitles a person to be informed of their rights, such as the right to seek the assistance of counsel.  Refusing to allow Michele to contact her attorney was violative of her right to due process under the 14th Amendment to the U.S. Constitution.

## COUNT IV

### (Action against the Sheriff)

47. The actions of Unknown Deputy #1, #2, and #3 were pursuant to an official policy or custom of the Sheriff's Office, in executing orders for protective custody.

48. Defendant, Sid Gautreaux, in his official capacity as the Sheriff of East Baton Rouge Parish, failed to properly instruct, supervise, control and monitor Unknown Deputies #1, #2, and #3 in their execution of orders for protective custody so that the constitutional rights of persons, such as Michele Guidry, are not violated.

49. Defendant Sheriff Gautreaux failed to institute policies and procedures for the execution of orders for protective custody which would protect the constitutional rights of persons sought to be taken into custody. Defendant Sheriff Gautreaux's failure to enact appropriate policies and procedures caused harm to Michele Guidry for which he is liable.

## DAMAGES

50. Michele suffered anxiety, mental anguish, embarrassment, and humiliation as a result of the extreme and outrageous actions of defendants, including the unreasonable search and seizure of her person and property and the deprivation of her liberty. In addition to mental anguish, humiliation, and embarrassment, Michele has suffered from post-traumatic stress disorder ("PTSD"), causing her to be afraid to open the door to her residence for fear of this happening again.

51. Michele has also suffered damage to her personal and professional reputations as she was taken into custody in front of her neighbors, as well as being paraded in front of her colleagues at the Bridge Center as someone in need of a mental health evaluation.

52. The extreme and outrageous intentional and negligent acts of defendants, as set forth herein, combined to cause deprivations of Plaintiff's constitutional and civil rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. §§ 1983 and 1988, as well as state tort laws under La. C.C. art. 2315, 2320, 2324; and state constitutional right to privacy under La. Const. Art. 1, Sec. 5.

53. These action by the named defendants were extreme and outrageous and also represent violations of state law:

    a) Battery;

    b) Assault;

    c) Defamation;

    d) Abuse of Process;

    e) Abuse of Rights;

    f) Intentional and/or Negligent Infliction of Emotional Distress; and

    g) False Arrest and False Detention.

54. Plaintiff seeks monetary damages in the following categories:

    a)   Mental Anguish, past, present, and future;

    b)   Post-traumatic stress disorder;

    c)   Embarrassment, humiliation and loss of enjoyment of life;

    e)   Damage to professional and personal reputation;

    f)   Attorney's fees; and

    g)   Punitive Damages.

53.     Plaintiff demands a Trial by Jury on all issues herein triable by jury.

**WHEREFORE,** Plaintiff, MICHELE GUIDRY, prays that after due proceedings are conducted and all legal delays have expired that this Honorable Court render a judgment herein in her favor against Defendants, Jami Guidry; Amanda Guidry; Dr. William "Beau" Clark, in his official and individual capacities; Sheriff Sid Geautreaux, in his official capacity; and Unknown Deputies #1, #2, and #3 in their individual capacities, individually, jointly, and/or in solido, in the sum for such reasonable sums for past, present and future pain and suffering, mental anguish, post-traumatic stress disorder, embarrassment and humiliation, loss of enjoyment of life, and permanent injury as are necessary to compensate plaintiff, as well as punitive damages, along with legal interest from the date of the judicial demand, all costs incurred, and reasonable attorney fees.

Respectfully submitted by:

**ROPER LIGH**
**Attorneys and Counselors at Law**


**/s/Mary E. Roper**
Mary E. Roper, La. Bar Roll No. 22146, T.A.
Randy B. Ligh, La. Bar Roll No. 22485
10839 Perkins Road
Baton Rouge, LA 70810
Telephone (225) 338-9238
Email: mary@roperligh.com
Email: randy@roperligh.com

*Attorneys for Plaintiff, Michele Guidry*